IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JENNIFER A. FIDLER, § § § Plaintiff, § § vs. § § § § KARIN WILSON, individually, and § THE CITY OF FAIRHOPE, § ALABAMA § § Defendants. § | Civil Action No. 1:19-cv-00179-TFM-M |

---

**FIRST AMENDED COMPLAINT**

---

## PARTIES

1. Plaintiff Jennifer A. Fidler is a resident of the State of Alabama and is over nineteen (19) years of age. Fidler resides in Baldwin County. She was an employee of the City of Fairhope. She worked as the Public Works Director and as a horticulturist for the City.

2. Ms. Fidler is an employee within the meaning set forth at 29 C.F.R. § 1620.1 ("Equal Pay Act").

3. The City of Fairhope, Alabama ("City") is an employer within the meaning set forth at 29 U.S.C. § 201, *et seq.* ("Fair Labor Standards Act").

1

4. Mayor Karin Wilson ("Wilson") is a resident of the State of Alabama and is over nineteen (19) years of age. Mayor Wilson is a resident of Baldwin County. She has served as mayor of the City of Fairhope during all events pertinent to this action.

## FACTS

5. Jennifer Fidler was employed by the City of Fairhope as the Public Works Director as of or until her termination on or about April 5, 2017.

6. Ms. Fidler also held the position of City Horticulturalist during her employment with the City.

7. Ms. Fidler remained in her position until she was terminated by Mayor Wilson on or about April 5, 2017.

8. Mayor Wilson took office in November 2016.

9. Sometime in late November or early December 2016, Ms. Fidler was in a meeting with Mayor Wilson and the City's Human Resources Manager, Pandora Heathcoe.

10. During that meeting, Ms. Fidler witnessed Mayor Wilson take Heathcoe by the shoulders and physically shake her (hereinafter, the "Shaking Incident").

11. On or around January 11, 2017, Ms. Fidler participated in a meeting with Mayor Wilson, City Personnel Board Chair Lorenzo Howard, and Heathcoe,

where Mayor Wilson accused Ms. Fidler of sharing information about the Shaking Incident with others (hereinafter, "January Meeting").

12. During the January Meeting, Ms. Fidler was confronted by Mayor Wilson and Howard regarding the Shaking Incident and told Fidler not to talk about the Shaking Incident further.

13. Howard told Ms. Fidler that only information supportive of the Mayor should be shared, so as not to further harm the relationship between the Mayor and the Fairhope City Council.

14. Quite uncomfortably, the Mayor then asked Heathcoe to confirm herself that her actions on the day of the Shaking Incident were not improper.

15. Heathcoe did so, but later filed a criminal complaint regarding the incident.

16. Ms. Fidler felt highly uncomfortable and pressured in the January Meeting to have to agree with Mayor Wilson and Howard to avoid being targeted further and losing her job.

17. On or about February 24, 2017, Mayor Wilson informed Ms. Fidler orally that she intended to fire her (hereinafter, "February Meeting").

18. Ms. Fidler requested that Mayor Wilson reconsider that intention or allow her to remain in her position until she reached retirement in less than a year.

19. Mayor Wilson told Ms. Fidler that she was not aware of her proximity to retirement and told her she would look into the matter further to determine what could be done.

20. On March 9, 2017, Ms. Fidler informed Mayor Wilson in writing that she would like to continue in her position until she reached retirement.

21. Mayor Wilson responded to Ms. Fidler's March 9 letter by e-mail stating that the two could meet, copying the Fairhope City Attorney, Tut Wynne, on the e-mail.

22. Ms. Fidler took Mayor Wilson's response to mean that she was still employed by the City but on leave of some sort.

23. In February and/or in March 2017, Ms. Fidler properly submitted sick leave or leave requests to the Defendant City of Fairhope.

24. On March 22, 2017, Ms. Fidler received a paycheck that did not reflect a retirement contribution.

25. The March 22 paycheck also indicated that Ms. Fidler's remaining vacation days were used to compensate her for the prior pay period.

26. On March 31, having still not been given the opportunity to meet with Mayor Wilson, despite the Mayor's March 9 e-mail, Ms. Fidler, by and through her attorney, sent an additional request to Mayor Wilson and the City Council that she

be retained solely as City Horticulturalist if she were to step down as Public Works Director.

27. Mayor Wilson stated that she intended to split Ms. Fidler's positions—Public Works Director and City Horticulturalist—into two positions.

28. Ms. Fidler received no further communication from Mayor Wilson regarding the Shaking Incident, January Meeting, or February Meeting until after her termination on or about April 5, 2017, when Ms. Fidler was forced to file a public records request to retrieve a copy of her personnel file.

29. In her personnel file, Ms. Fidler discovered a 'termination form' that stated she was terminated on or about April 5, 2017, with the reason for termination marked as 'other'.

30. Although the form states that further documentation is required for use of the 'other' reason, the only document within the relevant time period to the April 5, 2017 termination form in her file was an undated "Record of Conversation" form.

31. The "Record of Conversation" discusses the original Shaking Incident meeting, as well as the January meeting with the Mayor, Howard, Heathcoe, and Ms. Fidler.

32. Ms. Fidler had never seen this document before her public records request and had no opportunity to review or respond to it.

33. Ms. Fidler was never notified at any point—either during or after the Shaking Incident, January Meeting, or February Meeting that she was being disciplined regarding these events, or that a she was being terminate, or terminated for cause.

34. Had Ms. Fidler not been terminated in April 2017, she would have been eligible for retirement on January 1, 2018.

35. The City and Mayor Wilson have created a culture of inequality and oppression where employees cannot raise questions or concerns without fear of losing their jobs.

36. Mayor Wilson has made countless defamatory and slanderous statements regarding Ms. Fidler.

37. For example, Mayor Wilson stated in a public forum that was being recorded and was later published online that the reason for which Ms. Fidler was fired was "based on something that came up…that would prevent [her] from doing [her] job successfully."

38. Mayor Wilson separately wrote that the decision to fire Ms. Fidler was made because she "did not have another choice."

39. Mayor Wilson also wrote that firing Ms. Fidler "had to be done to protect the integrity and interest of the City at large."

40. Later, Mayor Wilson stated at a Fairhope City Council meeting in regards to Ms. Fidler's firing: "You don't know why these two city employees…if you did know you would know that I had no other choice."

41. Those comments were also recorded and published online.

42. The examples set forth in paragraphs 41-44 are just that—examples—and are not exhaustive of the comments made by Wilson, either orally or in writing, directly or indirectly. Regarding the Plaintiff.

43. Sometime after January 1, 2017, Mayor Wilson requested that Elias Technologies search Ms. Fidler's computer.

44. The City of Fairhope paid Elias Technologies for the actions taken against Ms. Fidler in both her professional and personal capacities.

45. Sometime after January 1, 2017, but prior to February 24, 2017, Mayor Wilson made a written offer to another individual for the position of Public Works Department Head for an amount of compensation in excess of the Plaintiff's salary and benefits for the position described and maintained by the City on or about February 24, 2017.

46. The foregoing acts by the Defendants were without legal basis, were intentional and in direct contradiction of the City of Fairhope's personnel policies and procedures, were discriminatory in regards to the Plaintiff's pay and benefits, and excessive. As a result of the Defendants' conduct, directly or by and through the

Defendant's agents, employees, servants or designees, Ms. Fidler has lost income, benefits, both past and future, and has suffered severe mental and emotional distress and damage to her reputation.

47. The Plaintiff, as required by law, filed claims with the City of Fairhope on or about July 10, 2017 and on or about August 23, 2017, for which the City has taken no action. These claims are incorporated by reference in their entirety, as if fully included herein, as part of the factual and legal allegations of this complaint.

## COUNT I
## FAILURE TO EQUALLY COMPENSATE

48. Ms. Fidler adopts and realleges paragraphs 1-47 above as if fully set forth herein.

49. Ms. Fidler is a female.

50. At the time Ms. Fidler was told she was being terminated, an offer letter for her position was already outstanding to a male for an amount of compensation that exceeded the approved range of compensation for that position with the Defendant City of Fairhope.

51. Said male was offered the same or similar position as Public Works Director while that position was held by Ms. Fidler.

52. The position offered, and now held, by said male is substantially the same and requires substantially the same amount of skill, expertise, and knowledge as it did when Ms. Fidler held the position.

53. At the time Ms. Fidler was told she was being terminated, after holding the position for approximately sixteen years, she was being paid $94,500 annually.

54. The initial offer letter from the City to the male offered him a $130,000 annual salary.

55. The conduct of the Defendant in offering, and subsequently hiring, a male for the same position at a substantially higher rate of pay than Ms. Fidler resulted in the hiring someone of the opposite sex.

56. Defendant City of Fairhope has also provided severance compensation, retirement benefits and other payments to former similarly situated male employees that were not likewise offered or paid to the Plaintiff.

57. Ms. Fidler has sustained a tangible economic detriment resulting from Defendant's discriminatory behavior.

58. Ms. Fidler sustained emotional suffering and injury attributable to the adverse employment actions taken by the Defendant.

59. The Defendant City of Fairhope acted with malice and reckless indifference to Ms. Fidler's civil rights and emotional and physical well-being.

60. The Defendant's conduct as alleged at length herein constitutes a violation of the Equal Pay Act as well as other applicable laws, and in violation of the Defendant City of Fairhope's own policies and procedures.

**WHEREFORE,** Plaintiff demands judgment against the Defendant City for compensatory and punitive damages, including but not limited to, mental and emotional distress, back and front pay, benefits, interest, court costs and expenses, a reasonable attorney's fee, and such other and further relief as this Court may deem just and proper.

## COUNT II
## CIVIL CONSPIRACY

61. Ms. Fidler adopts and realleges paragraphs 1-60 above as if fully set forth herein.

62. Defendants City of Fairhope, by and through Mayor Wilson, and together with Defendant City of Fairhope employees, agents, servants and contractors, conspired, either negligently or intentionally, to withhold, prevent and impede Plaintiff's ability to remain, continue, become, or receive benefits as, an employee of Defendant City of Fairhope.

63. Mayor Wilson acted beyond the scope of her authority as mayor when she conspired with other City employees, committee appointees and/or agents, and/or contractors to target and wrongfully terminate Ms. Fidler, to prevent her further employment by Defendant City of Fairhope, and/or to withhold benefits and payments for which she was entitled.

64. Lorenzo Howard acted beyond the scope of his authority as a member of the City's personnel board when he conspired with Mayor Wilson and/or other

City employees, committee appointees and/or agents, and/or contractors to quash and prevent Ms. Fidler's first amendment rights to "whistle blow", report or counsel fellow employees about the Mayor's physical touching and abuse of another employee.

65. These actions in concert have caused Ms. Fidler loss of compensation and benefits, mental anguish, emotional distress, and embarrassment for which she seeks damages herein, both compensatory and punitive.

**WHEREFORE,** Plaintiff demands judgment against the Defendants for compensatory and punitive damages, including but not limited to, mental and emotional distress, back and front pay, benefits, interest, court costs and expenses, a reasonable attorney's fee, and such other and further relief as this Court may deem just and proper.

## COUNT III
## BREACH OF CONTRACT AND
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

66. Ms. Fidler adopts and realleges paragraphs 1-65 above as if fully set forth herein.

67. The Defendant City of Fairhope failed to follow the applicable policies and procedures regarding their termination, and review of the termination, of Plaintiff's employment.

68. Defendant City did not correctly compensate the Plaintiff as agreed during her employment, up to and including her termination on or about April 5, 2017.

69. Defendant City did not correctly compensate the Plaintiff as agreed during her employment, up to and including her termination of employment, for her leave, vacation and other benefits.

70. Defendant City did not correctly compensate the Plaintiff as agreed during her employment regarding any and all retirement benefits which she had earned due to her employment with the Defendant, up to and including her termination of employment,

71. The Defendant did not correctly compensate the Plaintiff as agreed during her employment, up to and including her termination of employment, for any and all severance benefits to which she was entitled under the Defendant's policies, practices, procedures and/or personnel policies.

72. The Defendant failed to provide Plaintiff with any and all Family Medical Leave benefits for which she may have been entitled prior to her termination on or about April 5, 2017, pursuant to the applicable law and pursuant to the Defendant's employment policies, practices and provisions.

**WHEREFORE**, Plaintiff demands judgment against the Defendant for compensatory and punitive damages, including but not limited to, mental and

emotional distress, back and front pay, benefits, interest, court costs and expenses, a reasonable attorney's fee, and such other and further relief as this Court may deem just and proper.

## COUNT IV
## DEFAMATION

73. Ms. Fidler adopts and realleges paragraphs 1-72 above as if fully set forth herein.

74. Defendants, directly and by and through their agents, employees, contractors or assigns, made false, intentionally misleading and defamatory communication(s) regarding the Plaintiff which were beyond the scope of their position and authority with the City of Fairhope.

75. The Plaintiff had been a public employee with the Defendant City of Fairhope for more than sixteen years, and was highly visible in the community.

76. These false, misleading and defamatory statements, both oral and written, decreased the respect, regard, or confidence in which the Plaintiff was held within the community, causing the Plaintiff damage to her well- being and her employment.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for compensatory and punitive damages, including but not limited to, mental and emotional distress, back and front pay, interest, court costs and expenses, a

reasonable attorney's fee, and such other and further relief as this Court may deem just and proper.

## COUNT V

## SLANDER

77. Ms. Fidler adopts and realleges paragraphs 1-76 above as if fully set forth herein.

78. Defendant Wilson made false statements regarding the Plaintiff which damaged her reputation, regard, character or persona within the community.

79. Defendant Wilson, directly and indirectly, conspired, with others to make false and misleading statements regarding the Plaintiff which damaged Plaintiff's reputation, regard, character or persona within the community.

80. Defendant Wilson, at public meetings outside of her duties as the Mayor of Fairhope, made false and misleading statements regarding the Plaintiff with the intent to damage Plaintiff's reputation, regard, character or persona with the Fairhope City Council, with others who worked for and with the City, and within the community.

81. Defendant Wilson, at town hall meetings as part of her duties as the Mayor of Fairhope, made false and misleading statements regarding the Plaintiff with the intent to damage Plaintiff's reputation, regard, character or persona with the Fairhope City Council, with others who worked for and with the City, and within the community.

82.   Defendant Wilson, made oral statements to the press that contained false and misleading statements regarding the Plaintiff with the intent to damage Plaintiff's reputation, regard, character or persona with the Fairhope City Council, with others who worked for and with the City, and within the community.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for compensatory and punitive damages, including but not limited to, mental and emotional distress, back and front pay, interest, benefits, court costs and expenses, a reasonable attorney's fee, and such other and further relief as this Court may deem just and proper.

### COUNT VI
### LIBEL

83.   Ms. Fidler adopts and realleges paragraphs 1-82 above as if fully set forth herein.

84.   Defendant Wilson published statements that contained both false and misleading statements regarding the Plaintiff with the intent to damage Plaintiff's reputation, regard, character or persona with the Fairhope City Council, with others who worked for and with the City, and within the community.

85.   Defendant Wilson, directly and indirectly, conspired, with others to publish false and misleading statements regarding the Plaintiff which damaged Plaintiff's reputation, regard, character or persona within the community.

86. Defendant Wilson used City resources to communicate false and misleading statements regarding the Plaintiff which damaged Plaintiff's reputation, regard, character or persona within the community.

87. Defendant Wilson used City resources to request in writing that a forensic investigation be made by Elias Technologies using false and misleading statements regarding the Plaintiff with the intent to damage Plaintiff's reputation, regard, character or persona within the community.

88. Defendant Wilson published statements using social media that contained false and misleading statements regarding the Plaintiff with the intent to damage Plaintiff's reputation, regard, character or persona with the Fairhope City Council, with others who worked for and with the City, and within the community.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for compensatory and punitive damages, including but not limited to, mental and emotional distress, back and front pay, benefits, interest, court costs and expenses, a reasonable attorney's fee, and such other and further relief as this Court may deem just and proper.

### PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

/s/ Alyce M. Spruell
**Alyce M. Spruell** (asb-4144-r64a)
Attorney for Plaintiff Jennifer A. Fidler

<u>*Of Counsel*</u>:

Rosen ♦ Harwood, P.A.
2200 Jack Warner Parkway, Suite 200 (35401)
P.O. Box 2727
Tuscaloosa, Alabama 35403-2727
205-344-5000
aspruell@rosenharwood.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 31st day of May, 2019, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide notice to the following CM/ECF participants:

Hope Curtis Hicks
Ball, Ball, Matthews & Novak, P.A.
445 Dexter Avenue
Ste 9045
Montgomery, AL 36104
hhicks@ball-ball.com


Matthew C. McDonald
Kirkland E. Reid
Jones Walker LLP
11 N. Water Street, Suite 1200
Mobile, AL 36602
kreid@joneswalker.com

/s/ Alyce M. Spruell
Of Counsel